IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-21716-CIV-LENARD/O'SULLIVAN

RYAN GAYLE,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

## SUPPLEMENTAL REPORT AND RECOMMENDATION

THIS MATTER came before the undersigned following the Order Adopting in Part Report of Magistrate Judge (D.E. 15) and Recommitting to Magistrate Judge for an Evidentiary Hearing (DE# 18, 12/4/14). Having held an evidentiary hearing on February 12, 2015 and carefully considered the applicable filings and the law, the undersigned finds that with respect to Ground Two, the movant has failed to meet his burden of proving that: (1) counsels' representation fell below an objective standard of reasonableness and (2) that he suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Accordingly, the undersigned respectfully RECOMMENDS that the Court DENY Ground Two of Ryan Gayle's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE# 1, 5/7/12).

## BACKGROUND

On July 18, 2014, the undersigned issued a Report and Recommendation (DE# 15, 7/18/14) recommending that Ryan Gayle's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE# 1, 5/7/12)

be DENIED. The Court adopted in part the undersigned's Recommendation and issued an Order recommitting this matter to the undersigned for an evidentiary hearing "limited solely to the issue of ineffective assistance of counsel identified in Ground Two of the Motion and discussed in Section V(C)(1)" of the Court's Order (DE# 18 at 31, 12/4/14). Id.

In Ground Two of the instant motion, the movant claims he forfeited valuable rights and was subjected to a longer sentence due to his counsels' failure to properly explain his plea and trial options. See Motion to Vacate (DE#1 at 5, 5/7/12); Movant's Reply to Government's Response to Motion to Vacate (DE# 13 at 4, 8/29/12) (stating that counsels' erroneous advice cost the movant at least 4 to 5 years of unnecessary imprisonment).

On February 12, 2015, the undersigned held an evidentiary hearing. The movant testified on his own behalf and presented the testimony of attorneys Roderick Vereen and Richard Klugh. The government presented the testimony of attorneys Donald Bierman and Paul Lazarus. The Court admitted into evidence the movant's Exhibits 1 through 6 and the government's Exhibits 3 through 6. This matter is ripe for consideration.

## FINDINGS OF FACT

At least as early as January 2009, the movant was represented by attorneys Donald Bierman and Paul Lazarus. Mr. Bierman has worked for 46 years as a private attorney and for four years as a prosecutor. Mr. Lazarus has been an attorney for approximately 37 years.

Before trial, Mr. Lazarus discussed the federal sentencing guidelines, including

the safety valve provision, with the movant.[1] He prepared a rough calculation of the guideline score and told the movant the sentence he could expect with a guilty plea and the sentence he could expect if he lost at trial.[2]

Mr. Bierman also discussed with the movant what the risks were of pleading guilty and the impact of a guilty plea at sentencing. Mr. Bierman told the movant that if he pled guilty he could qualify for acceptance of responsibility. However, the only way

---

[1] The movant testified that prior to trial, Mr. Bierman and Mr. Lazarus never discussed with him the option of pleading guilty or how the safety valve would affect the minimum mandatory sentence. According to the movant, the first time he heard of the safety valve was after the trial, possibly when speaking with Mr. Vereen. The movant further testified that if he had known about the safety valve prior to trial, he would have pled guilty and sought the safety valve.

The undersigned credits Mr. Lazarus' testimony that on multiple occasions he discussed with the movant the sentencing guidelines and the possible consequences if the movant pled guilty or if he was found guilty at trial. The undersigned also credits Mr. Bierman's testimony that he explained the safety valve to the movant prior to the sentencing hearing. During the February 12, 2015 evidentiary hearing, the undersigned had the opportunity to observe the movant's candor and demeanor on the stand and does not find the movant's testimony credible. See United States v. Boulette, 265 F. App'x 895, 898 (11th Cir. 2008) (citing United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (noting that "[c]redibility determinations are within the province of the fact finder 'because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses.'"). The movant is serving a substantial term of imprisonment and has an interest in testifying favorably. The undersigned notes that at the evidentiary hearing, the movant testified that his attorneys never discussed with him the possibility of pleading guilty. It is highly improbable that any criminal defense attorney, much less seasoned criminal defense attorneys with 46 and 37 years of legal experience, would not discuss the possibility of entering a guilty plea with a client facing a considerable sentence if convicted at trial.

[2] Although Mr. Lazarus could not recall any specific conversations with the movant, he testified that it is his practice to discuss sentencing with every client he represents in a criminal case. It is not unusual that Mr. Lazarus did not remember specific conversations with the movant given that his representation of the movant in the underlying criminal case took place in 2009, approximately six years ago. The movant's other counsel, Mr. Bierman, also testified that he told the movant what the possible penalties and risks of going to trial were.

the movant could obtain a sentence below the 10-year minimum mandatory sentence was to qualify for the safety valve.

Although the movant never expressed any interest in pleading guilty, Mr. Lazarus had conversations with the government about the possibility of a guilty plea. The government refused to agree to a plea for a lesser quantity of drugs than the amount charged in the indictment, 3,500 pounds. Thus, regardless of whether the movant pled guilty or proceeded to trial, he would have been subject to the statutory 10-year minimum mandatory sentence unless he qualified for the safety valve.[3]

Mr. Lazarus discussed with the movant the government's insistence that the movant make certain factual admissions if he pled guilty. He told the movant that the government would not accept a guilty plea for a lesser quantity of drugs.

The movant never expressed to either Mr. Lazarus or Mr. Bierman a willingness to plead guilty. At no time did the movant admit to having any involvement with the drugs at issue. When the movant discussed the charged offenses with his attorneys, he always spoke in a hypothetical manner. He also never expressed a willingness to identify any co-conspirators.

This matter proceeded to a five-day jury trial commencing on May 4, 2009. On

---

[3] "It is well-settled that a district court is not authorized to sentence a defendant below the statutory mandatory minimum unless the government filed a substantial assistance motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 or the defendant falls within the safety-valve of 18 U.S.C. § 3553(f)." United States v. Castaing-Sosa, 530 F.3d 1358, 1360 (11th Cir. 2008). There is no evidence that the movant was willing to provide substantial assistance to the government and in fact did not admit his involvement in the charged offenses at all times through sentencing. Thus, the only way the movant could have obtained a sentence below the 10-year minimum mandatory sentence was if he qualified for the safety valve.

4

May 8, 2009, the jury returned a verdict finding the movant guilty of Counts 2 and 3 of the indictment and acquitting the movant of Count 1. See Verdict (DE# 64 in Case No. 08-20751-CR, 5/8/09). The movant continued to deny his guilt to his attorneys even after the jury's verdict.

On June 9, 2009, Mr. Bierman's secretary wrote a letter to the movant stating in part: "I have also enclosed the Bureau of Prisons statement on the Safety Valve which you had inquired about. I hope this answers your questions regarding this." June 9, 2009 Letter (Government's Exhibit 3).[4]

At some point after, the movant consulted with attorney Roderick Vereen, but did not retain him as trial counsel. After the jury's verdict, the movant again consulted with Mr. Vereen. Mr. Vereen met with the movant at the Federal Detention Center and the movant expressed an interest to Mr. Vereen in availing himself of the safety valve provision.

On September 21, 2009, Mr. Vereen sent a letter to Mr. Bierman. See September 21, 2009 Letter (Movant's Exhibit 1). The letter stated that Mr. Vereen had

---

[4] The movant maintains that Mr. Bierman authored the June 9, 2009 letter. On cross-examination at the February 12, 2015 hearing, Mr. Bierman clarified that he did not dictate this letter. Notably, the June 9, 2009 letter was not signed by Mr. Bierman, unlike the September 23, 2009 Letter (Movant's Exhibit 2), which was dictated by Mr. Bierman. Instead, the signature line of the June 9, 2009 letter states in bold, block print:

Bierman, Shohat, Loewy & Kegerreis

Jeri L. Mitchell
Legal Assistant

See June 9, 2009 Letter (Government's Exhibit 3). The undersigned credits Mr. Bierman's testimony that his legal assistant was the author of the June 9, 2009 Letter.

been retained to represent the movant on appeal.[5] The letter also stated the following:

> I have spoken to [the movant] regarding the issues he wants raised on appeal and I was wondering if you and I could discuss his case before sentencing so that we could be on one accord and make sure all of the issues he wants preserved are in fact preserved. **One issue that I was concerned with was the safety-valve reduction that he could avail himself of if he provided a safety-valve statement. To date, that has not been done and that alone could shave a couple of years off of his sentence.** Additionally, because of his drug use prior to his arrest, the Court could recommend that he be placed in the 500 hour drug program, which upon completion would guarantee him another year off of his sentence.
>
> [The movant] does not want to risk going to jail for 10 years if that could be avoided. I have not had the opportunity to read the trial transcripts yet but based on the pretrial motions I doubt there will be enough error during trial to reverse his conviction. As you may know, the Eleventh Circuit Court of Appeals reverses very few convictions. I have spoken to [the movant] about this and was very upfront with him about any possible relief on appeal.

Id. (emphasis added).

Mr. Bierman sent a response letter to Mr. Vereen on September 23, 2009.  See

September 23, 2009 Letter (Movant's Exhibit 2). In that letter, Mr. Bierman stated in

part:

> I received your letter with reference to [the movant]. As you now will be advised, Paul Lazarus and I both represent [the movant]. I discussed the objections to the PSR with Mr. Lazarus who has agreed to prepare them and has indicated to me he will file them out shortly.
>
> **With regard to the safety valve reduction, as I am sure you are aware, in order to receive the safety valve, one must be completely truthful with the government regarding the case of which they were convicted. Although Mr. Lazarus has explained this to [the movant] at least five times, [the movant] does not want to take this step.** In addition, if [the movant] is successful on appeal and he gives a "safety valve" statement, of course that could be used against him in any future

---

[5] The movant was ultimately represented by attorney Richard Klugh on appeal.

6

>prosecution.
>
>**[The movant] could enter into a cooperation agreement and seek a 5k, however he has indicated many times that he is not interested in pursuing this.** If there is anything further you wish to discuss, please feel free to contact the undersigned.

Id. (emphasis added).

Mr. Vereen did not recall if he met with the movant again after receiving Mr. Bierman's letter. However, on September 29, 2009, Mr. Vereen sent a follow up email to Mr. Bierman. See Movant's Exhibit 3. The email stated in part:

>Please find attached a Sentencing Memorandum I prepared for your filing **(upon receipt of the Safety-Valve Statement I intend to get from [the movant] tomorrow morning)**. I received your letter indicating that he had previously informed you that he did not want to provide any type of assistance to the United States Government. **As I previously stated, he wants to do whatever he can to get his time reduced.** I don't know if you have gone to see him recently but this is my understanding. I received a letter from his mother recently regarding a sentencing memorandum that I was going to prepare for his case regarding the safety valve issue. I have attached it for your use. I prepared it for your filing if you so chose to file it. **I prepared the motion days ago but held off sending it to you until I actually got the statement from [the movant]**. . . . From my standpoint, **if he gets the safety valve reduction and the 500 hour drug program he will shave off at least 1/3 of the time he's currently facing. He wanted a sentence somewhere around 5 years**. With these reductions, he will be closer to that sentence. I expect, in light of the bar complaint he filed against [the Assistant United States Attorney], she's going to be pushing for the maximum sentence possible.

Id. (emphasis added). The email enclosed a sentencing memorandum (Movant's Exhibit 4) drafted by Mr. Vereen seeking the application of the safety valve provision.

After receiving Mr. Vereen's email, Mr. Bierman visited the movant at the Federal Detention Center on September 29, 2009. See Memorandum to the File (Government's Exhibit 6). He brought a copy of Mr. Vereen's sentencing memorandum with him and

7

spoke to the movant about it. Id. Mr. Bierman and the movant discussed that if the movant gave a safety valve statement and he won on appeal and received a new trial, the safety valve statement could be used against the movant in the new trial. The movant told Mr. Bierman that he did not want to seek the safety valve.

At no time did the movant express to Mr. Bierman or Mr. Lazarus a willingness to provide a safety valve statement or to implicate other individuals in the charged offenses. The movant never provided an oral or written safety valve statement to Mr. Vereen, Mr. Bierman or Mr. Lazarus. Mr. Bierman and Mr. Lazarus did not file the sentencing memorandum (Movant's Exhibit 4) prepared by Mr. Vereen and did not seek the applicability of the safety valve provision.

The sentencing hearing took place on October 2, 2009. On the same day, the Court issued a judgment sentencing the movant to a term of 121 months imprisonment followed by a five-year term of supervised release and a $200.00 total assessment. See Judgment in a Criminal Case (DE# 77 in Case No. 08-20751-CR, 10/2/09).

## **ANALYSIS**

The Eleventh Circuit applies the two-prong test set forth in Strickland to analyze an ineffective assistance of counsel claim. Strickland requires the movant to prove that: (1) counsel's representation of the movant fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense. Diaz v. United States, 930 F.2d 832 (11th Cir. 1991). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. The reasonableness of counsel's conduct must be evaluated from counsel's perspective at the time of representation. Id.

    **a.**    **Deficient Performance**

The movant has not satisfied the performance prong of <u>Strickland</u>. "The performance prong requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment." <u>Butcher v. United States</u>, 368 F.3d 1290 (11th Cir. 2004) (citing <u>Strickland</u>, 466 U.S. at 687-89).

On multiple occasions prior to trial, Mr. Lazarus discussed the federal sentencing guidelines with the movant, including the possibility of qualifying for the safety valve provision. 18 U.S.C. § 3553(f). Specifically, Mr. Lazarus explained the movant's guideline score, how the sentencing guidelines applied in the movant's criminal prosecution and the consequences of pleading guilty versus proceeding to trial. Mr. Bierman also discussed with the movant what the risks were of pleading guilty and the impact of a guilty plea at sentencing. In addition to these pre-trial conversations with counsel, it is clear from the June 9, 2009 letter that Mr. Bierman's office provided the movant with written information concerning the safety valve provision prior to his sentencing hearing. <u>See</u> June 9, 2009 Letter (Government's Exhibit 3) ("I have also enclosed the Bureau of Prisons statement on the Safety Valve which you had inquired about. I hope this answers your questions regarding this."). Before the sentencing hearing, Mr. Bierman also visited the movant at the Federal Detention Center. Mr. Bierman and the movant discussed that if the movant gave a safety valve statement and he won on appeal and received a new trial, the safety valve statement could be used against the movant in the new trial. The movant told Mr. Bierman that he did not want to seek the safety valve.

Under the circumstances of this case, the movant has failed to show that either of his counsel performed in a constitutionally deficient manner.

**b.     Prejudice**

The movant has not satisfied the prejudice prong of Strickland. In order to meet this prong, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

To apply the safety valve, the sentencing court was required to find that the movant "not later than the time of the sentencing hearing . . . truthfully provided to the Government all information and evidence [he] ha[d] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." 18 U.S.C. § 3553(f). The undersigned credits Mr. Lazarus' and Mr. Bierman's testimony that the movant was insistent on going to trial and that he at all times was not interested in: (1) entering a guilty plea, (2) providing a complete and truthful statement concerning the charged offenses or (3) implicating co-conspirators.[6] Prior to trial, the movant could not have qualified for the safety valve without meeting all three of these factors. After the jury's verdict and before sentencing, the movant could not have qualified for the safety valve without meeting the last two factors. Because the movant would not have qualified for the safety valve at any time before he was sentenced, he cannot show prejudice.

---

[6] Because the indictment contained conspiracy charges, the movant would have had to identify all co-conspirators in any safety valve statement.

**CONCLUSION**

In sum, Mr. Lazarus and Mr. Bierman explained the federal sentencing guidelines including the safety valve provision to the movant prior to trial. The movant was well counseled and made a knowing and informed decision when he elected to proceed to trial, instead of pleading guilty. Mr. Bierman explained the safety valve provision to the movant after the trial and before the sentencing hearing and the movant again made an informed decision not to seek the safety valve provision before he was sentenced. Accordingly, the undersigned finds that the movant has not satisfied either prong of Strickland.

**RECOMMENDATION**

For the foregoing reasons, the undersigned respectfully RECOMMENDS that the Court **DENY** Ground Two of Ryan Gayle's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE# 1, 5/7/12). Pursuant to 28 U.S.C. §636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Judge, within fourteen (14) days of receipt of a copy of this Report and Recommendation. See Nettles v. Wainwright, 677 F. 2d 404 (5th Cir. 1982)

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this **17th** day of February, 2015.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Lenard
All counsel of record