## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-21716-CIV-LENARD/O'SULLIVAN

**RYAN GAYLE,**

      Movant,

**v.**

**UNITED STATES OF AMERICA,**

      Respondent.

_____/

## ORDER ADOPTING THE SUPPLEMENTAL REPORT OF THE MAGISTRATE JUDGE (D.E. 31), DENYING MOVANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE SENTENCE, DENYING CERTIFICATE OF APPEALABILITY, AND CLOSING CASE

**THIS CAUSE** is before the Court on the Supplemental Report and Recommendation of Magistrate Judge John J. O'Sullivan, ("Supplemental Report," D.E. 31), entered February 17, 2015.  Movant Ryan Gayle ("Movant") filed Objections on July 27, 2015, ("Objections," D.E. 43), to which the Government filed a Response on August 12, 2015, ("Response," D.E. 47).  Upon review of the Supplemental Report, Objections, Response, and the record, the Court finds as follows.

### I.    Background

On August 21, 2008, a federal grand jury returned an Indictment against Movant in Case Number 08-20751-CR-Lenard in the Southern District of Florida.[1]

---

[1]    The criminal case was tried before visiting United States District Judge Richard W. Goldberg (see Cr-D.E. 43), and was transferred to the undersigned on May 21, 2012, after

("Indictment," Cr-D.E. 3.)  The Indictment charged Movant with (1) conspiracy to import 1,000 kilograms or more of marijuana, (2) importation of 1,000 kilograms or more of marijuana, and (3) conspiracy to possess with the intent to distribute marijuana.  (See id.)

On May 8, 2009, the jury returned a verdict finding Movant guilty of Counts 2 and 3 of the Indictment, and acquitting him of Count 1.  (See Jury Verdict, Cr-D.E. 64.)  The Special Verdict specifically found that Counts 2 and 3 involved at least 1,000 kilograms of marijuana.  (Id.)  The Court ultimately sentenced Movant to 121 months' imprisonment, followed by a five-year term of supervised release and a $200.00 total assessment.[2]  (Judgment in a Criminal Case, Cr-D.E. 77.)  On December 21, 2010, the Eleventh Circuit affirmed the district court's judgment and sentence.  See United States v. Gayle, 406 F. App'x 352 (11th Cir. 2010).

On May 7, 2012, Movant filed the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  ("Motion," D.E. 1.)  Therein, he asserted claims alleging: (1) improper imposition of a 121-month sentence, (id. at 4);[3] (2) ineffective assistance of counsel in failing to properly convey an evaluation of trial and plea options, (id. at 5); (3) ineffective assistance of counsel at sentencing for various errors related to failing to seek and obtain a safety valve reduction under the United States Sentencing

---

Movant filed the instant Motion to Vacate (see Cr-D.E. 126).  Citations to the criminal docket are denoted "Cr-D.E."

[2]     On December 23, 2014, the Court entered an Order reducing Movant's sentence to 120 months' imprisonment pursuant to 18 U.S.C. § 3582(c)(2) and 28 U.S.C. § 994(u).  (See Cr-D.E. 131.)

[3]     The page citations to the instant Motion refer to the page numbers automatically assigned by the Court's ECF system.

Guidelines, (id. at 7); and (4) various instances of ineffective assistance of counsel based on trial preparation and strategy, (id. at 8).  Movant also requested an evidentiary hearing in his Reply brief.  (See D.E. 13 at 9.)  On January 30, 2014, the Court referred the Motion to Judge O'Sullivan.  (See D.E. 14.)  On July 18, 2014, Judge O'Sullivan issued a Report recommending that the Court deny Movant's Motion in its entirety.  (See D.E. 15 at 32.)

On December 12, 2014, the Court adopted Judge O'Sullivan's Report in part, finding that: (1) the Court did not improperly impose a 121-month sentence, (D.E. 18 at 15); (2) defense counsel was not ineffective for failing to seek a safety valve reduction at sentencing, (id. at 22); and (3) trial counsel was not ineffective for the multiple failures alleged in Ground Four of the Motion, (id. at 22).[4]  However, the Court found that Movant was entitled to an evidentiary hearing as to Ground Two, which alleged the following:

> Movant was misled as to trial and plea options; counsel failed to explain that the defense to conspiracy charges at trial [i.e., that Movant intended to possess marijuana with intent to distribute, but did not intend to possess as much marijuana as the government claimed[5]] was an incomplete defense, because defendant was essentially admitting his role in importing marijuana (500 pounds).  Going to trial caused defendant to forfeit valuable rights with a guilty plea, including the right to litigate issues as to the mandatory minimum, the application of acceptance of responsibility and safety valve reductions, and grounds for downward variance.  By going to trial, the defendant lost the opportunity to preserve these issues and effectively litigate his sentence, costing him 5 levels of guideline reduction (to a guideline minimum of no more than 70 months - 4 years less than the

---

[4]      The Court incorporates herein its December 12, 2014 Order Adopting in Part Judge O'Sullivan's Report.  (D.E. 18.)

[5]      (See Reply, D.E. 13 at 4.)

3

> sentence he received).  The plea was especially valuable as movant also had to resolve state court charges.  The defendant was erroneously advised that his only means of litigating the mandatory minimum was to go to trial, when in fact, he could much better litigate the issue by pleading guilty, thus avoiding the mandatory minimum with the safety valve, 18 USC 3553(f).  Had the defendant known he had no meaningful defense as to 500 pounds of marijuana and had such substantial plea benefits, he would have entered any viable plea to have an opportunity to reduce his sentencing exposure and return to his family, including his wife and young child.  See Missouri v. Frye, 132 S. Ct. 1399 (2012).

(Motion at 5.)  The Court found "that the facts alleged regarding this claim, if true, would entitle Movant to relief.  He is therefore entitled to an evidentiary hearing."  (Report at 16-17 (citing Aron v. United States, 291 F.3d 708, 715 n.6 (11th Cir. 2002)) ("[T]o be entitled to an evidentiary hearing, a [movant] need only allege—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief.  If the allegations are not affirmatively contradicted by the record and the claims are not patently frivolous, the district court is required to hold an evidentiary hearing.").)

On February 12, 2015, Judge O'Sullivan conducted an evidentiary hearing with respect to Ground Two.  (See Supp. Report at 1.)  Movant testified on his own behalf and presented the testimony of attorneys Roderick Vereen and Richard Klugh.  (Id. at 2.)  The Government presented the testimony of attorneys Donald Bierman and Paul Lazarus.  (Id.)  The Court also admitted into evidence several exhibits.  (See id.)  Ultimately, Judge O'Sullivan found that Movant failed to satisfy either prong of Strickland v. Washington, 466 U.S. 668, 689-92 (1984).  (Id. at 9-11.)  With respect to the performance prong, Judge O'Sullivan found that on multiple occasions prior to trial, both defense attorneys (Lazarus and Bierman) "discussed the federal sentencing guidelines with the movant,

4

including the possibility of qualifying for the safety valve provision." (Id. at 9.)  With respect to the prejudice prong, Judge O'Sullivan found that Movant would not have qualified for the safety valve because he was "insistent on going to trial and that he at all times was not interested in: (1) entering a guilty plea, (2) providing a complete and truthful statement concerning the charged offenses or (3) implicating co-conspirators." (Id. at 10.)  Judge O'Sullivan therefore recommends the Court deny the Motion as to Ground Two.  (Id. at 11.)

On July 9, 2015, Movant filed Objections, arguing that: (1) the safety valve was not discussed prior to trial; (2) any mention of the safety valve prior to trial was inadequate; (3) Movant did not fully understand the risks of proceeding to trial; and (4) the testimony of Roderick Vereen rebuts Judge O'Sullivan's finding that Movant would not have qualified for the safety valve.  (Objections at 5-12.)

## II.    Legal Standard

Upon receipt of the Magistrate Judge's Report and Movant's Objections, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); accord Fed. R. Civ. P. 72(b)(3).  The court must conduct a de novo review of any part of the Report that has been "properly objected to."  Fed. R. Civ. P. 72(b)(3); see 28 U.S.C. § 636(b)(1) (providing that the district court "shall make a de novo determination of those portions of the [R & R] to which objection is made").  "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the

district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "[I]n the absence of a timely filed objection, a district court . . . must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" See Macort v. Prem, Inc., 208 F. App'x 781, 784 (11th Cir. 2006) (quoting Diamond v. Colonial Life & Accident Ins., 416 F.3d 310, 315 (4th Cir. 2005)).

Because Ground Two alleges ineffective assistance of counsel, the two-pronged test established in Strickland v. Washington, 466 U.S. 668 (1984) applies. "First, the defendant must show that counsel's performance fell below a threshold level of competence. Second, the defendant must show that counsel's errors due to deficient performance prejudiced his defense such that the reliability of the result is undermined." Tafero v. Wainwright, 796 F.2d 1314, 1319 (11th Cir. 1986). Under the second prong of the Strickland test, Movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

## III.   Discussion

Ground Two alleges that defense counsel was ineffective for failing to properly convey an evaluation of Movant's trial and plea options. (Motion at 5.) Judge O'Sullivan found that Movant failed to establish that his attorneys' performance was constitutionally deficient or that he suffered prejudice under Strickland. (Supp. Report at

6

9-11.)  Movant objects, arguing that: (1) the evidence shows that the safety valve was not discussed prior to trial; (2) if the safety valve was discussed, it was inadequately discussed; (3) Movant did not fully understand the risks of proceeding to trial; and (4) had he been adequately advised about the safety valve and that he lacked a meaningful defense, he would not have insisted upon going to trial.  (Objections at 5-12.)

### a.    Defense counsel explained the safety valve provision before trial.

First, Movant objects to Judge O'Sullivan's factual finding that Movant's attorneys, Donald Bierman and Paul Lazarus, explained the safety valve provision to him prior to trial.  (Objections at 4.)  Judge O'Sullivan's factual findings are as follows:

> At least as early as January 2009, the movant was represented by attorneys Donald Bierman and Paul Lazarus.  Mr. Bierman has worked for 46 years as a private attorney and for four years as a prosecutor.  Mr. Lazarus has been an attorney for approximately 37 years.

> Before trial, Mr. Lazarus discussed the federal sentencing guidelines, including the safety valve provision, with the movant.[6]  He prepared a

---

[6]    The movant testified that prior to trial, Mr. Bierman and Mr. Lazarus never discussed with him the option of pleading guilty or how the safety valve would affect the minimum mandatory sentence.  According to the movant, the first time he heard of the safety valve was after the trial, possibly when speaking with Mr. Vereen.  The movant further testified that if he had known about the safety valve prior to trial, he would have pled guilty and sought the safety valve.

The undersigned credits Mr. Lazarus' testimony that on multiple occasions he discussed with the movant the sentencing guidelines and the possible consequences if the movant pled guilty or if he was found guilty at trial.  The undersigned also credits Mr. Bierman's testimony that he explained the safety valve to the movant prior to the sentencing hearing.  During the February 12, 2015 evidentiary hearing, the undersigned had the opportunity to observe the movant's candor and demeanor on the stand and does not find the movant's testimony credible.  See United States v. Boulette, 265 F. App'x 895, 898 (11th Cir. 2008) (citing United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (noting that "[c]redibility determinations are within the province of the fact

rough calculation of the guideline score and told the movant the sentence he could expect with a guilty plea and the sentence he could expect if he lost at trial.[7]

Mr. Bierman also discussed with the movant what the risks were of pleading guilty and the impact of a guilty plea at sentencing.  Mr. Bierman told the movant that if he pled guilty he could qualify for acceptance of responsibility.  However, the only way the movant could obtain a sentence below the 10-year minimum mandatory sentence was to qualify for the safety valve.

Although the movant never expressed any interest in pleading guilty, Mr. Lazarus had conversations with the government about the possibility of a guilty plea.  The government refused to agree to a plea for a lesser quantity of drugs than the amount charged in the indictment, 3,500 pounds.  Thus, regardless of whether the movant pled guilty or proceeded to trial, he would have been subject to the statutory 10-year minimum mandatory sentence unless he qualified for the safety valve.[8]

---

finder 'because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses.'").  The movant is serving a substantial term of imprisonment and has an interest in testifying favorably. The undersigned notes that at the evidentiary hearing, the movant testified that his attorneys never discussed with him the possibility of pleading guilty.  It is highly improbable that any criminal defense attorney, much less seasoned criminal defense attorneys with 46 and 37 years of legal experience, would not discuss the possibility of entering a guilty plea with a client facing a considerable sentence if convicted at trial.

[7]      Although Mr. Lazarus could not recall any specific conversations with the movant, he testified that it is his practice to discuss sentencing with every client he represents in a criminal case.  It is not unusual that Mr. Lazarus did not remember specific conversations with the movant given that his representation of the movant in the underlying criminal case took place in 2009, approximately six years ago.  The movant's other counsel, Mr. Bierman, also testified that he told the movant what the possible penalties and risks of going to trial were.

[8]      "It is well-settled that a district court is not authorized to sentence a defendant below the statutory mandatory minimum unless the government filed a substantial assistance motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 or the defendant falls within the safety-valve of 18 U.S.C. § 3553(f)."  United States v. Castaing-Sosa, 530 F.3d 1358, 1360 (11th Cir. 2008).  There is no evidence that the movant was willing to provide substantial assistance to the government and in fact did not admit his involvement in the charged offenses at all times through sentencing.  Thus, the only way the movant could have obtained

Mr. Lazarus discussed with the movant the government's insistence that the movant make certain factual admissions if he pled guilty.  He told the movant that the government would not accept a guilty plea for a lesser quantity of drugs.

The movant never expressed to either Mr. Lazarus or Mr. Bierman a willingness to plead guilty.  At no time did the movant admit to having any involvement with the drugs at issue.  When the movant discussed the charged offenses with his attorneys, he always spoke in a hypothetical manner.  He also never expressed a willingness to identify any co-conspirators.

This matter proceeded to a five-day jury trial commencing on May 4, 2009.  On May 8, 2009, the jury returned a verdict finding the movant guilty of Counts 2 and 3 of the indictment and acquitting the movant of Count 1.  See Verdict (DE# 64 in Case No. 08-20751-CR, 5/8/09).  The movant continued to deny his guilt to his attorneys even after the jury's verdict.

On June 9, 2009, Mr. Bierman's secretary wrote a letter to the movant stating in part: "I have also enclosed the Bureau of Prisons statement on the Safety Valve which you had inquired about.  I hope this answers your questions regarding this."  June 9, 2009 Letter (Government's Exhibit 3).[9]

---

a sentence below the 10-year minimum mandatory sentence was if he qualified for the safety valve.

[9]    The movant maintains that Mr. Bierman authored the June 9, 2009 letter.  On cross-examination at the February 12, 2015 hearing, Mr. Bierman clarified that he did not dictate this letter.  Notably, the June 9, 2009 letter was not signed by Mr. Bierman, unlike the September 23, 2009 Letter (Movant's Exhibit 2), which was dictated by Mr. Bierman.  Instead, the signature line of the June 9, 2009 letter states in bold, block print:

Bierman, Shohat, Loewy & Kegerreis

Jeri L. Mitchell
Legal Assistant

See June 9, 2009 Letter (Government's Exhibit 3).  The undersigned credits Mr. Bierman's testimony that his legal assistant was the author of the June 9, 2009 Letter.

9

At some point after, the movant consulted with attorney Roderick Vereen, but did not retain him as trial counsel.  After the jury's verdict, the movant again consulted with Mr. Vereen.  Mr. Vereen met with the movant at the Federal Detention Center and the movant expressed an interest to Mr. Vereen in availing himself of the safety valve provision.

On September 21, 2009, Mr. Vereen sent a letter to Mr. Bierman. See September 21, 2009 Letter (Movant's Exhibit 1).  The letter stated that Mr. Vereen had been retained to represent the movant on appeal.[10]  The letter also stated the following:

> I have spoken to [the movant] regarding the issues he wants raised on appeal and I was wondering if you and I could discuss his case before sentencing so that we could be on one accord and make sure all of the issues he wants preserved are in fact preserved.  **One issue that I was concerned with was the safety-valve reduction that he could avail himself of if he provided a safety-valve statement.  To date, that has not been done and that alone could shave a couple of years off of his sentence.**  Additionally, because of his drug use prior to his arrest, the Court could recommend that he be placed in the 500 hour drug program, which upon completion would guarantee him another year off of his sentence.
>
> [The movant] does not want to risk going to jail for 10 years if that could be avoided.  I have not had the opportunity to read the trial transcripts yet but based on the pretrial motions I doubt there will be enough error during trial to reverse his conviction.  As you may know, the Eleventh Circuit Court of Appeals reverses very few convictions.  I have spoken to [the movant] about this and was very upfront with him about any possible relief on appeal.

Id. (emphasis added).

Mr. Bierman sent a response letter to Mr. Vereen on September 23, 2009.  See September 23, 2009 Letter (Movant's Exhibit 2).  In that letter, Mr. Bierman stated in part:

---

[10]     The movant was ultimately represented by attorney Richard Klugh on appeal.

I received your letter with reference to [the movant]. As you now will be advised, Paul Lazarus and I both represent [the movant]. I discussed the objections to the PSR with Mr. Lazarus who has agreed to prepare them and has indicated to me he will file them out shortly.

**With regard to the safety valve reduction, as I am sure you are aware, in order to receive the safety valve, one must be completely truthful with the government regarding the case of which they were convicted. Although Mr. Lazarus has explained this to [the movant] at least five times, [the movant] does not want to take this step.** In addition, if [the movant] is successful on appeal and he gives a "safety valve" statement, of course that could be used against him in any future prosecution.

**[The movant] could enter into a cooperation agreement and seek a 5k, however he has indicated many times that he is not interested in pursuing this.** If there is anything further you wish to discuss, please feel free to contact the undersigned.

Id. (emphasis added).

Mr. Vereen did not recall if he met with the movant again after receiving Mr. Bierman's letter. However, on September 29, 2009, Mr. Vereen sent a follow up email to Mr. Bierman. See Movant's Exhibit 3. The email stated in part:

Please find attached a Sentencing Memorandum I prepared for your filing **(upon receipt of the Safety-Valve Statement I intend to get from [the movant] tomorrow morning)**. I received your letter indicating that he had previously informed you that he did not want to provide any type of assistance to the United States Government. **As I previously stated, he wants to do whatever he can to get his time reduced.** I don't know if you have gone to see him recently but this is my understanding. I received a letter from his mother recently regarding a sentencing memorandum that I was going to prepare for his case regarding the safety valve issue. I have attached it for your use. I prepared it for your filing if you so chose [sic] to file it. **I prepared the motion days ago but held off sending it to you until I actually got**

**the statement from [the movant]**. . . . From my standpoint,
**if he gets the safety valve reduction and the 500 hour drug
program he will shave off at least 1/3 of the time he's
currently facing.   He wanted a sentence somewhere
around 5 years**.  With these reductions, he will be closer to
that sentence. I expect, in light of the bar complaint he filed
against [the Assistant United States Attorney], she's going to
be pushing for the maximum sentence possible.

<u>Id.</u> (emphasis added).   The email enclosed a sentencing memorandum
(Movant's Exhibit 4) drafted by Mr. Vereen seeking the application of the
safety valve provision.

After receiving Mr. Vereen's email, Mr. Bierman visited the movant
at the Federal Detention Center on September 29, 2009. <u>See</u> Memorandum
to the File (Government's Exhibit 6).  He brought a copy of Mr. Vereen's
sentencing memorandum with him and spoke to the movant about it.   <u>Id.</u>
Mr. Bierman and the movant discussed that if the movant gave a safety
valve statement and he won on appeal and received a new trial, the safety
valve statement could be used against the movant in the new trial.   The
movant told Mr. Bierman that he did not want to seek the safety valve.

At no time did the movant express to Mr. Bierman or Mr. Lazarus a
willingness to provide a safety valve statement or to implicate other
individuals in the charged offenses.  The movant never provided an oral or
written safety valve statement to Mr. Vereen, Mr. Bierman or Mr. Lazarus.
Mr. Bierman and Mr. Lazarus did not file the sentencing memorandum
(Movant's Exhibit 4) prepared by Mr. Vereen and did not seek the
applicability of the safety valve provision.

(Supp. Report at 2-8 (footnotes in original).)  Thus, there is overwhelming evidence that

Mr. Bierman and Mr. Lazarus discussed the safety valve provision with Movant on

numerous occasions.

Movant appears to argue that the June 9, 2009 letter Mr. Bierman's secretary sent

to Movant controverts the overwhelming evidence that both defense attorneys repeatedly

discussed the safety valve provision with Movant.  (<u>See</u> Objections at 5 ("Mr. Bierman

would not likely be sending safety valve information after trial if he had already explained it pretrial.").)  This argument is unpersuasive.

To begin with, Movant <u>requested</u> the safety valve information, so he was clearly aware of the safety valve provision before he spoke with Vereen.  (<u>See</u> Supp. Report at 5 (quoting the letter as stating "I have also enclosed the . . . statement on the Safety Valve <u>which you had inquired about</u>.") (emphasis added).)  Notably, at the evidentiary hearing Movant did not testify that he requested the safety valve information because his lawyers failed to adequately explain it to him before trial.  (<u>See</u> Transcript of 2255 Motion ("Transcript"), D.E. 38 at 28-52.)  There are several other explanations for why Movant requested the safety valve information—he simply may have wanted the information in written form for ease of reference when considering his options prior to sentencing. Certainly, the fact that he requested the safety valve information from Mr. Bierman does not prove (or even suggest) that his attorneys failed to discuss it with him before trial.

In any event, Judge O'Sullivan properly weighed all of the evidence, made credibility determinations, and concluded that Mr. Bierman and Mr. Lazarus discussed the safety valve provision with Movant before and after trial.  Judge O'Sullivan specifically credited Mr. Lazarus's testimony "that on multiple occasions he discussed with the movant the sentencing guidelines and the possible consequences if the movant pled guilty or if he was found guilty at trial." (Supp. Report at 3 n.1.)  He also credited Mr. Bierman's testimony that he "discussed with the movant what the risks were of pleading guilty and the impact of a guilty plea at sentencing," including "that if he pled guilty he could qualify for acceptance of responsibility."  (<u>Id.</u> at 3.)  Mr. Bierman also

explained to Movant that the only way he "could obtain a sentence below the 10-year minimum mandatory sentence was to qualify for the safety valve." (Id. at 3-4.)

Judge O'Sullivan acknowledged Movant's testimony that Bierman and Lazarus never discussed the option of pleading guilty or how the safety valve would affect his mandatory minimum sentence. (Id. at 3 n.1.) However, Judge O'Sullivan specifically found that, having "had the opportunity to observe the movant's candor and demeanor on the stand," Movant's evidentiary hearing testimony was not credible. (Id. at 3 n.1 (citing Boulette, 265 F. App'x at 898 (citing Ramirez-Chilel, 289 F.3d at 749 (noting that "[c]redibility determinations are within the province of the fact finder 'because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses.'")))).)

The Court finds that Judge O'Sullivan's factual findings are fully supported by the record. (See, e.g., Transcript at 83-84 (Bierman testifying that prior to trial "[t]here is no question . . . that I discussed the safety valve with him, as did Paul Lazarus, and that to get the safety valve, you had to make a complete and honest statement and he was unwilling to do that"); id. at 108-09 (Lazarus testifying that he could state, with confidence, that he discussed the safety valve with Movant prior to trial). The fact that Movant requested (and Mr. Bierman's secretary provided) information regarding the safety valve prior to sentencing does not refute the overwhelming evidence that Mr. Bierman and Mr. Lazarus discussed the safety valve provision with Movant prior to and after trial. See Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1248-50 (11th Cir. 2006) (noting that to the extent the magistrate judge's findings turn on evaluations of

14

credibility or "demeanor-intensive fact finding," those findings should not be rejected or overruled lightly as "the raw transcript of the hearing" does not capture the "nuances of the testimony or the demeanor of the witnesses."); United States v. Cofield, 272 F.3d 1303, 1305-06 (11th Cir. 2001) (holding that, absent the "rare case" where a transcript evidences an "articulable basis for rejecting the magistrate's original resolution of credibility," a district court cannot reject a magistrate judge's credibility findings without rehearing the disputed testimony) (quoting United States v. Marshall, 609 F.2d 152, 155 (5th Cir. 1980)[11]).  Accordingly, the Court adopts Judge O'Sullivan's factual findings as recited above.

### b.  Counsel provided adequate information regarding the safety valve.

Next, Movant objects to Judge O'Sullivan's conclusion that defense counsel's explanation of the safety valve prior to trial was constitutionally adequate.   (Objections at 5.)  Of course, this argument is in direct contradiction to his previous argument, in which he maintained that the "[s]afety valve was not discussed prior to trial."  (Id. at 4 (emphasis added).)   He now latches on to vague statements made by Bierman and Lazarus during the evidentiary hearing to argue that their pre-trial explanation of the safety valve (which he now apparently concedes took place) was constitutionally inadequate because they erroneously advised him that the Assistant U.S. Attorney ("AUSA") would ultimately determine whether his statement qualified him for the safety valve.  (Id. at 6-7.)

---

[11]     In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

To qualify for safety-valve relief, a defendant must truthfully and fully disclose to the government any information within his knowledge "concerning the . . . offenses that were part of the same course of conduct" for which the defendant is being sentenced. U.S.S.G. § 5C1.2(a)(5) (the "tell-all provision").  A district court cannot apply the safety valve if it determines that the defendant withheld or misrepresented information, even if the information would not have aided further investigation or prosecution if properly disclosed.  United States v. Figueroa, 199 F.3d 1281, 1283 (11th Cir. 2000) (per curiam). "[L]ies and omissions do not, as a matter of law, disqualify a defendant from safety-valve relief so long as the defendant makes a complete and truthful proffer not later than the commencement of the sentencing hearing."  United States v. Brownlee, 204 F.3d 1302, 1305 (11th Cir. 2000).  In determining the honesty of a defendant, the district court must independently assess the facts and may not rely on the government's assertion of dishonesty.  United States v. Espinosa, 172 F.3d 795, 797 (11th Cir. 1999) (per curiam).

First, Movant cites the following quote from Mr. Lazarus at the evidentiary hearing: "[t]he other area of discussion is this is what [AUSA] Andy Hoffman believes. To get the safety valve, you have to give a true and complete statement to the government.  If you are not, forgive my French if you will, singing her tune, she is going to say, Judge, it wasn't truthful, and you're not going to get the safety valve and you run the risk of there being other consequences from that."  (Id. at 6-7 (quoting Transcript at 113).)  Lazarus made this statement in response to the following question: "After trial and before sentencing, did you have communications with Mr. Gayle about the possibility of giving a safety valve statement at sentencing even though he had gone to trial and been

convicted?" (Transcript at 112.)  The Court previously rejected Movant's arguments of

that counsel was ineffective for failing to adequately explain the safety valve adjustment

after trial and prior to sentencing.  (See Order Adopting in Part Report of the Magistrate

Judge (D.E. 18) at 19-22.)  The sole issue before this Court is the adequacy of defense

counsel's representation, including their explanation of the safety valve, prior to trial;

indeed, Movant's argument falls under the heading "[a]ny mention of safety valve prior

to trial was plainly inadequate." (Objections at 5.)  Because Lazarus's statement pertains

to a communication that occurred after trial, it is irrelevant to the issue before the Court.

Second, Movant cites the following quote from Mr. Bierman at the evidentiary

hearing: "I think that Paul Lazarus had a major responsibility of explaining safety valve

to him, but it was clear that if he was unwilling to cooperate, he would, therefore, be

unwilling to give a truthful statement that would be acceptable to the government which

would have to certify that a truthful statement had been made in order to get the safety

valve." (Id. at 7 (quoting Transcript at 76-77).)  This is a legally false statement, as the

Government does not have to certify that a defendant provided a truthful statement for

safety valve application.  See U.S.S.G. 5C1.2(a); Espinosa, 172 F.3d at 797 (noting that

"the responsibility for determining the truthfulness of the information the defendant

provided to the Government [is] the court's").  However, the principle that Bierman was

trying to illustrate, as clarified later in his testimony, is that if the Government tells the

Court at the sentencing hearing that the defendant's factual statement is untruthful, the

Court is unlikely to find that the "tell-all" provision has been satisfied.  (See Transcript at

104 ("If the government states that what the person has stated does not make a perfect case, the Court is not going to accept the plea.").)

> Q. Nor could a defendant come in and plead to 500 pounds of marijuana when the government believes the evidence would prove that it is 3,500. If the government doesn't agree, that plea is not necessarily going forward either?
>
> A. That's correct.

(Id.)

Regardless, there is no indication that Movant's attorneys advised him before trial that the Government would determine his safety-valve eligibility. Indeed, Movant testified that his attorneys did not explain the safety valve provision to him before trial:

> Q. Before you went to trial, was there ever a discussion about the possible benefits of taking a plea?
>
> A. I think I recall them saying that my plea agreement was ten years, and I was facing a minimum mandatory of ten years. So my best option would be to go to trial.
>
> Q. Did they ever explain the term 'safety valve' and its relationship to the minimum mandatory?
>
> A. No.

(Transcript at 35-36.)

> Q. Now, when was the first time you heard about the term "safety valve"?
>
> A. The first time, I think it was with Roderick.
>
> Q. Was it before or after trial?
>
> A. After trial.

18

(Id. at 38.)   Now, taking the complete opposite position, he isolates a vague statement made by Mr. Bierman at the evidentiary hearing to argue that the safety valve was discussed and the advice was constitutionally inadequate.   (See id. at 5.)   The Court considers this a frivolous objection that does not merit further consideration other than to note that Bierman's statement, at worst, reflects that the Government is entitled to recommend that a defendant not receive the safety valve if it believes the information provided is inadequate or untruthful.  18 U.S.C. § 3553(f); see also United States v. Pope, 424 F. App'x 827, 829 (11th Cir. 2011) (finding that the district court did not improperly defer to the Government's assessment of the defendant's truthfulness where the government argued at sentencing that the defendant's statement was too vague to meet the "tell-all" provision of the safety valve statute).

Judge O'Sullivan found that Movant failed to show that his attorneys performed in a constitutionally deficient manner with respect to pre-trial safety valve discussions. (Supp. Report at 10.)  This finding is not clearly erroneous, and Movant's objection is therefore overruled.  See Marsden, 847 F.2d at 1548 ("Frivolous, conclusive, or general objections need not be considered by the district court."); Macort, 208 F. App'x at 784 (noting that in the absence of a proper objection the Court "'need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" (quoting Diamond, 416 F.3d at 315).

### c.    Movant's made a knowing and informed decision to go to trial.

Next, Movant argues that he did not fully understand the risks of proceeding to trial.  (Objections at 8.)  He appears to argue that his attorneys failed to explain that their

19

theory of defense—i.e., that (1) Movant was guilty of importing marijuana but less than the amount alleged by the Government and (2) he could not be convicted of conspiracy when the only connection he had to the co-conspirators was through a government informant—was "akin to walking Mr. Gayle into a ten-year minimum mandatory sentence while blindfolded." (Id. at 9.) Judge O'Sullivan concluded that Movant "was well counseled and made a knowing and informed decision to proceed to trial, instead of pleading guilty." (Supp. Report at 11.) The Court finds that this conclusion is fully supported by the record.

First, the defense's strategy went well-beyond Movant's characterization of it. For example, the defense argued that Movant could not be guilty of conspiracy because the only evidence of the conspiracy involved Movant talking to a Government informant, Garrick, who could not legally be a co-conspirator. See, e.g., United States v. Lively, 803 F.2d 1124, 1126 (11th Cir. 1986) ("[I]t is well-settled that a person cannot conspire with a government informer who secretly intends to frustrate the conspiracy.") (citations omitted). Movant argues that this defense was doomed because binding precedent establishes that "the fact that the defendant's only connection with and knowledge of the unknown co-conspirators was through a government informer does not vitiate the conspiracy." (Objections at 9 (citing Sears v. United States, 343 F.2d 139, 142 (5th Cir. 1965)).)

However, the defense theory was not merely that the other co-conspirators were not known, it was that they were not real. (See U.S. v. Gayle, 08-20751-CR-Lenard, D.E. 101 at 89-90 ("[W]e don't know even if Sean exists."); id. at 90 ("[W]e don't know,

20

again, I said, who's real and who isn't, because you'll recall from Garrick's testimony, when asked about Julio, and then the government came up with Julio is Jaun [sic], and Juan is Sean, Sean is – I don't know what.  Oh, I made that name up.  I made that name up.  Just like he made up most of the other things.  He made up the off-loaders, supposedly in Miami."); <u>id.</u> at 99 ("We're told about all these people, allegedly coconspirators with Ryan Gayle: Dog man, Maxine, Sean, Peter.  Did I miss it or was there a Jamaican policeman in here to report how he investigated all of these people at the request of the United States enforcement agencies?  Don't you think if this was real, if these people existed, if these people existed or were not working directly with Tanto Irie, that they would have been investigated?  Don't you think our government, no less the government of Jamaica, would be interested in a corrupt dog handler at Amerijet in Jamaica, where cargo gets shipped regularly to the United States?  Don't you think we'd have heard about this investigation, if it existed?").  Clearly, if this defense had succeeded, Movant would have been acquitted of the conspiracy charged in Count III.  <u>See</u> <u>United States v. Arbane</u>, 446 F.3d 1223, 1228 (11th Cir. 2006) (noting that "you cannot have a conspiracy without an agreement between two or more culpable conspirators" and that "[i]f there are only two members of a conspiracy, neither may be a government agent or informant who aims to frustrate the conspiracy").

The Government's case was built around the testimony of its informant, Lloyd Garrick, who defense counsel impeached at length.  (Cr-D.E. 99 at 107-72).  For example, defense counsel cross-examined Garrick about failing a drug test one week before trial and about lying to the prosecutor about his prior drug use, (<u>id.</u> at 124-26);

pressed him into admitting that he violated his agreements with the Government by smoking marijuana for the preceding 10 years, (id. at 117-20); elicited from Garrick that he was a deportable alien and that his status in the U.S. hinged on his continuing cooperation as an informant, (id. 107-09); and questioned Garrick about the amount of money he received from the government, getting him to admit that he had not paid taxes on that income, (id. at 107-13, 116). As Bierman explained at the evidentiary hearing:

> It was one of the best credibility attacks that I was able to do. We had everything, motivation and money, lying to the prosecutor, the awards he was given including dismissing an old case of which he was guilty of, the fact that the man wouldn't answer a question looking straight. I thought it was one of my better crosses, frankly.

(Transcript at 106.) And while no formal entrapment instruction was given, defense counsel persuasively argued that the informant had enticed Gayle by offering to sell him 500 pounds of marijuana at a bargain rate. (Cr-D.E. 101 at 86-89.) This Court previously found that this informal entrapment defense may have been the basis for the acquittal on the importation conspiracy charged in Count I. (Order Adopting in Part Report of the Magistrate Judge (D.E. 18) at 26-28.)

In fact, part of the defense theory was to characterize Movant as someone who merely expressed "an interest" in purchasing 500 pounds of marijuana. (Transcript at 115-16.)

> A. There needed to be some explanation for what Ryan was doing there on a night in question and an explanation that did not hurt Ryan criminally.

> Q. And a crime that is not charged would get you there?

> A. That's correct, you can't be convicted of one of those.

22

(Id. at 116.)   Movant was not charged with a substantive possession with intent to distribute count, and a mere buyer-seller relationship is insufficient to establish a conspiracy.  See United States v. Mercer, 165 F.3d 1331, 1335 (11th Cir. 1999) ("'Where the buyer's purpose is merely to buy and the seller's purpose is merely to sell, and no prior or contemporaneous understanding exists between the two beyond the sales agreement, no conspiracy has been shown.'") (quoting United States v. Beasley, 2 F.3d 1551, 1560 (11th Cir. 1993)).

Thus, Movant's characterization of counsel's theory of defense is incomplete and inaccurate.  Defense counsel made arguments that, if successful, could have garnered a full acquittal.  The fact that counsel was only partially successful in their defense strategy does not render their assistance ineffective.  Upon de novo review, the Court adopts Judge O'Sullivan's finding that Movant "was well counseled and made a knowing and informed decision to proceed to trial, instead of pleading guilty."  (Supp. Report at 11.)

### d.    Prejudice under Strickland.

Under the prejudice prong of the Strickland test, Movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.  Judge O'Sullivan found that Movant could not establish prejudice:

> To apply the safety valve, the sentencing court was required to find that the movant "not later than the time of the sentencing hearing . . . truthfully provided to the Government all information and evidence [he] ha[d] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." 18 U.S.C. § 3553(f). The

undersigned credits Mr. Lazarus' and Mr. Bierman's testimony that the movant was insistent on going to trial and that he at all times was not interested in: (1) entering a guilty plea, (2) providing a complete and truthful statement concerning the charged offenses or (3) implicating co-conspirators.[12]   Prior to trial, the movant could not have qualified for the safety valve without meeting all three of these factors.

(Supp. Report at 10 (footnote in original).)

Movant argues that Judge O'Sullivan's finding that Movant refused to provide a complete and truthful statement concerning the charged offenses and implicate co-conspirators is rebutted by Roderick Vereen's testimony.  (Objections at 10.)  Mr. Vereen testified that he spoke with Movant and it was Vereen's "understanding that [Movant] wanted to avail himself of" the safety valve.  (Transcript at 15.)  In an email to Mr. Bierman dated September 29, 2009, Mr. Vereen stated that Movant "wants to do whatever he can to get his time reduced."  (D.E. 29 at 4.)  However, Mr. Vereen spoke with Movant after he had been convicted at trial, (id. at 7); the issue before the Court is whether Movant was willing to provide a truthful statement concerning the charged offenses before trial.  Mr. Vereen's testimony does not speak to that issue.

There was overwhelming testimony at the evidentiary hearing that Movant was not willing to admit guilt—even to his attorneys—or otherwise provide a truthful statement concerning the charged offenses prior to trial.  To take just one example from Mr. Bierman's testimony:

Q. . . . Was Mr. Gayle, at any point in your discussions prior to trial, willing to admit that he was involved with the amount of narcotics that there was seizures of and lab tests proving the existence of marijuana?

---

[12]   Because the indictment contained conspiracy charges, the movant would have had to identify all co-conspirators in any safety valve statement.

A. No.

Q. Was he willing to admit to some lesser figure?

A. No.

Q. Was he willing to admit that he was involved in importing narcotics at all?

A. No.

(Transcript at 72; <u>see also</u> <u>id.</u> at 69 (Bierman testifying that Movant "said he wasn't guilty and he wasn't going to plead guilty"); <u>id.</u> at 71 ("Mr. Gayle was unwilling to involve anyone else in his case."); <u>id.</u> at 75 ("[W]e knew of no co-conspirators that could have existed based on what our client told us"); <u>id.</u> at 78 ("[H]e never told us that there were any other people he could implicate because his position was that he didn't do this."); <u>id.</u> at 96 ("He was unwilling to give a truthful statement.  Only spoke to us in hypotheticals which would not have been satisfactory."); <u>id.</u> at 110 ("Ryan was not prepared to admit that he had anything to do with any of those drugs."); <u>id.</u> at 116 ("Ryan was never willing to give a safety valve statement."); <u>id.</u> at 121 ("Giving a safety valve statement, you do that after you have determined to plead guilty.  He never determined to plead guilty. He knew that he could get less of a sentence if he plead guilty."); <u>id.</u> at 122 (Lazarus testifying regarding pre-trial discussions of plea and safety valve options that Movant "could never get through the plea colloquy with the way he was presenting his case.  He would never had a statement of facts that the government requires a defendant to agree to. There was no way we were agreeing to the government's statement of facts which was going to put him with the 3,500 kilos or pounds of marijuana."); <u>id.</u> at 123-24 ("He

wouldn't admit to anything with regard to participation in the marijuana whether it was the importation, the conspiracy to import or the conspiracy to possess with intent to distribute, or that he was taking that marijuana when it came off the truck.  So how do you then get a client to plead guilty when he is not admitting to any element of any offense.  That's a rhetorical question.  I was in a position where we could not do that.");  id. at 125 ("Mr. Gayle would simply not admit anything that I could use to formulate a plea.").)

Simply put, even assuming arguendo that counsel's performance was constitutionally deficient, Movant cannot show a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different because he was not willing to plead guilty, provide a complete and truthful statement concerning the charged offenses, or implicate co-conspirators.  See Strickland, 466 U.S. at 694.  He is therefore not entitled to relief under Strickland's prejudice prong.

**IV.    Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.      The Supplemental Report and Recommendation of the Magistrate Judge (D.E. 31), filed February 17, 2015, is **ADOPTED**;

2.      Ground Two of Movant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (D.E. 1), filed May 7, 2012, is **DENIED**;

3.      A Certificate of Appealability **SHALL NOT ISSUE**; and

4.      This case is now **CLOSED.**

**DONE AND ORDERED** in Chambers at Miami, Florida this 24th day of August,

2015.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**